REINALDO OLLER, demandante, recurrido y recurrente, *v.* HERIBERTO PURCELL BAUZÁ, demandado, recurrente y recurrido.

*Números:* R-63-84, R-63-86      *Resuelto:* 26 de marzo de 1965

---

*Norman A. Pardo, R. Elfrén Bernier* y *Miguel Marcos Contreras*, abogados del demandante, recurrido y recurrente; *Guillermo Cintrón Ayuso, Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira* y *Nicolás Jiménez,* abogados del demandado, recurrente y recurrido.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Reinaldo Oller inició una acción contra Heriberto Purcell en reclamación de los daños que sufrió con motivo de un incendio que se originó en un inmueble que el demandante poseía como arrendatario y que con motivo de la conflagración quedó

reducido a escombros. El tribunal de instancia determinó que el fuego fue ocasionado por una instalación eléctrica "defectuosa" y rechazó la teoría del demandado de que la causa del mismo obedeció a una sobrecarga de las líneas eléctricas con motivo de la instalación y el uso por el actor de cierto equipo eléctrico. (¹) Específicamente concluyó que Oller fue diligente al poner en conocimiento del arrendador—mediante requerimientos orales—la necesidad de la reparación y que ejerció el debido cuidado para evitar la pérdida de la casa arrendada. Declaró con lugar la demanda y sin lugar la reconvención, y ordenó al demandado a satisfacer la suma de $5,518.00, las costas y $500.00 para honorarios de abogado.

Ambas partes recurrieron contra la sentencia.

1. Los primeros cuatro errores señalados por el demandado se dirigen a impugnar varias determinaciones de hechos que dieron base a la sentencia, a saber: 1) que el incendio fue ocasionado por una instalación eléctrica defectuosa; 2) que el demandante fue diligente al notificar sobre el defecto en la instalación; 3) que el demandado no hizo las reparaciones necesarias durante los tres años que tuvo la casa alquilada al demandante; y, 4) que el demandante ejercitó el debido cuidado para evitar la pérdida del inmueble.

La lectura de la transcripción de los testimonios de los testigos presentados por las partes y el examen de la prueba documental admitida demuestran que la prueba sobre los anteriores extremos fue contradictoria. El tribunal a quo dirimió el conflicto y no tenemos fundamento para alterar su apreciación. Tampoco compartimos el criterio del demandado de que el balance racional de la prueba debe inclinarse a su

---

(¹) A este respecto vale la pena recordar que la obligación impuesta por ley al arrendador de entregar al arrendatario la casa arrendada exige que aquél la entregue en. tal· situación que permita al arrendatario hacer de ella el disfrute que se propone. *Cole* v. *Escambrón Development Co.*, 73 D.P.R. 520 (1952). No es aventurado asegurar que ello incluye una instalación eléctrica suficiente para que el arrendatario pueda instalar el equipo que la ciencia ha inventado para un goce más cómodo de la vida moderna.

favor. Solamente le asiste la razón en cuanto a la determinación de que el demandado omitió hacer las reparaciones necesarias durante tres años. Hay prueba confiable al efecto de que hizo algunas reparaciones. Pero este hecho no resulta ser decisivo, pues en cuanto a las de la instalación eléctrica, es claro que no se efectuaron. La posición del demandado durante el juicio fue negar que se le requiriera para ello, y descansó además en que antes de entregar la posesión de la casa al demandante efectuó cierta reparación.(2) *Burgos Quiñones* v. *Autoridad Fuentes Fluviales*, 90 D.P.R. 613 (1964) es distinguible, pues allí se sostenía que el fuego se había originado en las líneas de energía eléctrica de la demandada, y no en la instalación interior de las casas siniestradas. Además, precisamente el demandante, contrario a lo que aquí ocurre, falló en establecer la relación causal.

Habiendo llegado a la conclusión de que el incendio se debió a una instalación eléctrica defectuosa, cuya corrección fue requerida por el arrendatario, el tribunal aplicó correctamente la norma para determinar la responsabilidad por la pérdida de la cosa cuando está presente una relación de arrendador y arrendatario. Arts. 1444, 1449 y 1452 del Código Civil, ed. 1930, 31 L.P.R.A. secs. 4051, 4056 y 4059. *Goenaga* v. *West Indies Trading Corp.*, 88 D.P.R. 865 (1963) ; *Cabinero* v. *Cobián Theatres*, 81 D.P.R. 960 (1960) ; *Costa* v. *Waldrop Photographic Co.*, 54 D.P.R. 80 (1939) ; *Ruiz* v. *Umpierre*, 49 D.P.R. 270 (1935) ; *Del Valle* v. *M. González & Co.*, 39 D.P.R. 820 (1929) ; *Ramírez* v. *Muñoz*, 33 D.P.R. 362 (1924).

Lo expuesto dispone también del planteamiento sobre comparación de culpas, ya que ningún acto negligente puede atribuirse al demandante.

---

(2) La descripción de la reparación efectuada señaló que más bien se trataba de separar el suministro de energía eléctrica para tres locales distintos, y que al efecto, se instalaron tres contadores independientes. Es cierto que la persona a cargo de la labor habló de otras reparaciones, pero no se precisaron exactamente.

2. Sostiene el demandado recurrente que el tribunal de instancia incidió en error[3] al declarar con lugar la demanda a pesar de que la prueba estableció que fueron orales los requerimientos que le hizo el arrendatario recurrido para que efectuara las reparaciones necesarias en la instalación eléctrica del inmueble arrendado, infringiéndose así lo preceptuado en el Art. 10 de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 190, según leía antes de ser enmendado por la Ley Núm. 67 de 19 de junio de 1964 (Leyes, ed. Equity, pág. 184) : [4]

"El arrendador está obligado a hacer en la propiedad alquilada todas las reparaciones necesarias durante el arrendamiento a fin de conservarla en estado de servir para el uso a que ha sido destinada, y a mantener en funcionamiento todos sus servicios; Disponiéndose, que si el arrendador no hiciere las reparaciones necesarias ni mantuviere en funcionamiento los servicios, según aquí se determina, después de haber sido requerido para ello mediante notificación por escrito de un oficial de Sanidad o del inquilino, el Administrador citará a audiencia al propietario y al inquilino para determinar la necesidad de las reparaciones, y comprobada aquélla, fijará el importe razonable de las mismas y ordenará al propietario para que las lleve a cabo; Disponiéndose, que si el propietario no hiciere dichas reparaciones en el

---

[3] El demandante recurrido insiste en que el Tribunal no debe considerar este apuntamiento que no fue incluido en la solicitud original de revisión y que se incorporó por primera vez en el alegato del demandado recurrente. No es necesario que resolvamos ahora si la parte recurrente puede solamente impugnar la sentencia por los fundamentos aducidos en la solicitud de revisión, ya que en el presente caso el fundamento adicional se adujo *después* que, en el ejercicio de nuestra discreción, habíamos decidido revisarla, y no se trata de una revisión *parcial*.

Por otro lado, la alegación sobre la necesidad de la notificación escrita aparece planteada como una de inexistencia de causa de acción, que podríamos considerar en el trámite de revisión aun cuando no se hubiere levantado en el tribunal de instancia. Cf. *Sucn. Castillo* v. *Descartes*, 83 D.P.R. 98 (1961) ; *Zalduondo* v. *Iturregui*, 83 D.P.R. 1 (1961).

[4] La enmienda de 1964 eliminó los dos *disponiéndose* del texto que hasta entonces prevalecía y confirió autorización al Administrador para que mediante reglamentación estableciera las normas que deben regir para que se cumpla con la obligación apuntada del casero de hacer las reparaciones necesarias. Véase, 17 R.&R.P.R. sec. 186-33, vigente desde el 29 de enero de 1965.

término fijado por el Administrador, éste autorizará al inquilino para que las haga y deduzca su importe del alquiler en la forma que a ese efecto determine dicho Administrador. . . ."

Invoca para ello el siguiente lenguaje de la opinión emitida en *Rodríguez* v. *Lema Cuervo*, 87 D.P.R. 612 (1963):

"Si bien nuestra obligación judicial es armonizar, cuando esto sea posible, las disposiciones en contrario de dos estatutos sobre la misma cuestión, no debemos olvidar que cuando se trata de disposiciones especiales y disposiciones generales, las primeras prevalecen sobre las segundas en todo aquello expresamente cubierto por las disposiciones especiales. Siendo esto así, es claro que el Art. 10 de la Ley Núm. 464 de 25 de abril de 1946, en todo lo relacionado con las *reparaciones necesarias*, sustituye las disposiciones de los artículos 1444, 1446 y 1449 del Código Civil de Puerto Rico (1930).

"En cuanto a la obligación del arrendador de conservar la cosa arrendada en estado de servir para el uso a que ha sido destinada, el *Disponiéndose* del Art. 10 de la Ley Núm. 464 establece un nuevo medio mediante el cual el Administrador de Estabilización Económica puede obligar al arrendador a cumplir con esta obligación, determinando la necesidad de tales reparaciones, fijando el importe razonable de las mismas y ordenando al arrendador a efectuar las mismas dentro de un término fijado por el Administrador y si el arrendador no las hiciera, autorizando al inquilino a realizarlas por su cuenta con cargo al arrendador.

"En cuanto a la notificación del arrendatario al arrendador de la necesidad de tales reparaciones, que de acuerdo con los artículos 1470 y 1449 del Código Civil de Puerto Rico podía hacerse verbalmente o por escrito—10 Manresa, *Comentarios al Código Civil Español* 585 (edición Reus 1950)—el primer *Disponiéndose* del Art. 10 de la Ley Núm. 464 le exige al arrendatario hacer la notificación al arrendador por escrito. Otra vez se consagra legislativamente el deber de diligencia impuesto al arrendatario por ser la persona que mantiene 'relación más directa e inmediata con la cosa durante el tiempo del contrato' (Manresa, pág. 584)."

Una lectura cuidadosa de la opinión transcrita revelará que debe limitarse a los hechos que allí se consideraron y que

no puede extenderse a una acción en que no se trata de recobrar daños y perjuicios por el incumplimiento del contrato de arrendamiento dimanante de la omisión del arrendador de hacer las reparaciones necesarias en la cosa arrendada a fin de conservarla en estado de servir para el uso a que se destina. Tanto el texto del Art. 10, como regía para la fecha en que tuvo lugar el suceso que dio margen al pleito, como su redacción actual, indican que la notificación escrita se requiere para iniciar un trámite administrativo con miras a una posible intervención del Administrador de Estabilización Económica en representación del interés social, a fin de conciliar los criterios dispares del arrendador y el arrendatario sobre los aspectos de la necesidad de las reparaciones y el costo de las mismas. En este sentido cobra significación decisiva la manifestación contenida en la opinión citada que caracteriza el remedio del Art. 10 como "nuevo método coercitivo," y que, a renglón seguido dice que dicha disposición "no deja hoy al arbitrio de las partes, en cuanto a reparaciones ordinarias se refiere, cualquier causa de daño que tanto la desidia del arrendador como la malicia del arrendatario pueda producir."

Abona a nuestra interpretación sobre el alcance del Art. 10 lo que se dispone en el subsiguiente Art. 13, 17 L.P.R.A. sec. 203, que impone al arrendador la obligación de observar las leyes y reglamentos de sanidad y las órdenes y disposiciones que dictare el Secretario de Salud para la protección y seguridad públicas. Más aún, la Ley Núm. 67 enmendó esta última provisión para incluir entre las órdenes y reglamentos que deben ser observados los dictados por la Autoridad de las Fuentes Fluviales. Claramente el propósito legislativo es lograr mantener la seguridad pública, evitando que cualquier discrepancia entre las partes—fruto natural de una relación contractual intervenida por el Estado—derrote el fin social de un goce pacífico y seguro de la propiedad arrendada.

Por otro lado, desde otro punto de vista, la presente acción, justamente apreciada, se dirige a obtener el resarcimiento de los daños causados por una omisión del arrendador—efectuar las reparaciones necesarias—y se enmarca dentro del precepto general de la responsabilidad extracontractual. *Torres* v. *Fernández*, 56 D.P.R. 482, 492–493 (1940). No le sería estrictamente aplicable una disposición que propende al cumplimiento del contrato. (5) '

3. El recurso del demandante se contrae a impugnar la cuantía de la indemnización que le fuera concedida por concepto de los daños físicos y sufrimientos y angustias mentales por lesiones y quemaduras que recibió. Dice el tribunal a quo: "Oller recibió quemaduras en la espalda, pies, cara, pecho, brazos y orejas. Estuvo recluído en el Hospital Professional Building de 7:00 A.M. a 1:00 P.M. el día del incendio, y pasó a la Clínica Pavía por un mes. Estuvo una semana recluído en su casa y luego alrededor de tres semanas en el Hospital Auxilio Mutuo. Presenta cicatrices a todo lo largo del brazo derecho y desde el hombro hasta el codo en el brazo izquierdo." Las fotografías presentadas en evidencia son testimonio elocuente de los estragos que sufrió. Intensos tienen que haber sido sus dolores; imborrable es el resultado de las lesiones.

---

(5) Puig Brutau (*Fundamentos de Derecho Civil*, t. II, vol. II, pág. 274), en interpretación de una disposición idéntica al Art. 1444 del Código Civil, patrocina la solución de que si el arrendador omite hacer las reparaciones necesarias y las emprende el arrendatario, éste tiene un derecho de reembolso por el importe de lo gastado, pero haciéndolo depender de la notificación "para dar lugar a que sea el arrendador quien preferentemente emprenda por su parte las reparaciones necesarias. Sólo subsidiariamente se transforma esta obligación del dueño de la cosa en la de tener que reembolsar al arrendatario el importe de las reparaciones necesarias cuando el primero no las hiciere." Añade que "Si incluso prescindiendo del caso de una reparación urgente, el arrendatario ha de tener 'a su favor el derecho a pedir la *rescisión* del *contrato* con la correspondiente indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente' (Puig Peña) y efectivamente opta por lo segundo, tendremos un arrendatario que seguirá siéndolo sin que el arrendador lleve a término una reparación necesaria y a cambio de cobrar, en su lugar, una indemnización."

■ Aunque ordinariamente no intervendremos con la discreción del tribunal al estimar el importe de la indemnización, éste es sin duda un caso en que la cantidad concedida no compensa adecuadamente ni guarda una proporción razonable con los daños experimentados. Se aumentará de $3,000 a $8,000 la suma concedida por el concepto indicado.

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 1 de marzo de 1963, y así modificada, se confirmará.*